UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN JEROME WILLIAMS,<br><br>Plaintiff,<br><br>vs.<br><br>LARRY SMALL, et al.,<br><br>Defendant. | CASE NO. 09-CV-1957-MMA(RBB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[Doc. No. 25] |

On September 4, 2009, Plaintiff Stephen Jerome Williams ("Plaintiff"), a state prisoner proceeding *pro se*, commenced this action seeking relief under 42 U.S.C. § 1983. Plaintiff filed his Second Amended Complaint on May 12, 2010 [Doc. No. 18]. Defendants R. Johnson, J. Kellerman, T. Diaz, and R. Hopper filed a motion to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. No. 25], joined by Defendants McEwen and Anderson [Doc. No. 30]. Plaintiff filed an opposition to the motion [Doc. No. 31], to which Defendants replied [Doc. No. 33]. For the following reasons, the Court **GRANTS** Defendants' motion.

///
///
///
///

# BACKGROUND

Plaintiff is a prisoner currently incarcerated at Calipatria State Prison, proceeding *pro se* and *in forma pauperis* on his Second Amended Complaint ("SAC") filed pursuant to 42 U.S.C. § 1983. Defendants are a group of correctional officers and supervising administrators at Calipatria State Prison. The following description of events is taken from the pleadings and is not to be construed as findings of fact by the Court.[1]

On or about February 26, 2009, correctional officers found Plaintiff in possession of a contraband cellular telephone, at which time Plaintiff removed the SIM card from the phone, chewed it, and swallowed it. Defendant Diaz witnessed Plaintiff's actions, and based thereon recommended to Defendant Johnson that Plaintiff be transferred to the Administrative Segregation Unit ("Ad Seg") and placed on "contraband watch."[2] Defendant Kellerman approved this suggestion, and Plaintiff was transferred to Ad Seg, where he was processed and strip searched by an unknown officer. According to Plaintiff, the unknown officer gave him two jump suits and ordered him to put on one jump suit facing forward, and the second the jump suit facing backward, "like a makeshift straight jacket." *SAC*, 4. Plaintiff states that once he had put on the jump suits, the unknown officer used masking tape to wrap his ankles together, cutting off the circulation to his legs. Once taped, the unknown officer shackled Plaintiff with leg irons and used masking tape to wrap Plaintiff's abdominal area, cuffing his hands to a padlocked waist chain.

Plaintiff was then placed in a holding cell, outfitted with a bench mounted to the floor against the back wall, a mattress on the floor, and a bright light which stayed lit at all times. Plaintiff states that the cell had no bed, no sink, no toilet, and no sheets or blankets. The unknown officer advised Plaintiff that he would remain on contraband watch for 72 hours, or until he was able to provide three separate bowel movements. *SAC*, 5. After numerous unsuccessful attempts to produce a

---

[1] Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn therefrom, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

[2] A contraband watch has been explained accurately as "a special temporary confinement used to determine whether an inmate has ingested or secreted contraband in his digestive tract and, if so, to recover it." *Chappell v. Mandeville*, No. S-03-0653-GEB-KJM-P, 2009 U.S. Dist. LEXIS 26782, 2009 WL 900151 at * 3, n.5 (E.D. Cal. March 31, 2009).

1  bowel movement and the passage of 48 hours, Plaintiff requested a laxative and was able to produce
2  stool, which upon examination, contained the SIM card he had swallowed.  Defendant Hopper
3  refused to release Plaintiff from contraband watch, however, advising him that he still was required
4  to provide a total of three separate bowel movements.

5  On March 1, 2009, after approximately three days on contraband watch, Defendant
6  Andersen, Associate Warden, toured the Ad Seg facilities.  Plaintiff advised Defendant Andersen
7  that he had produced two bowel movements, including one containing the SIM card, and that he had
8  been on contraband watch for more than 72 hours.  According to Plaintiff, Defendant Andersen
9  laughed at him and "informed me that she could get me a good job in Silicon Valley"
10 "manufacturing SIM cards."  *SAC*, 6.  Plaintiff felt humiliated, and remained on contraband watch
11 for a total of 105 hours.

12 Because the holding cell had no toilet, Plaintiff states that he was required to use a bucket
13 and a quart sized plastic bottle in order to relieve himself.  Because the holding cell had no sink,
14 Plaintiff alleges that he was not able to wash his hands, take a shower, brush his teeth, or wash his
15 face for the entire time he was on contraband watch.  Plaintiff states that after 48 hours of
16 confinement in the described conditions he began to experience migraine headaches, neck and back
17 pain, numbness and loss of feeling in his hands and feet, bruising and lacerations on his wrists and
18 ankles, and abdominal cramping.  He was also unable to sleep because of the bright light in his
19 holding cell that was kept lit 24 hours per day.  Plaintiff complained about his injuries and an
20 unknown registered nurse conducted a visual examination and determined that his injuries were not
21 serious and that he would not be allowed to see a doctor while on contraband watch.  *SAC*, 10.

22 Plaintiff alleges that Defendants deliberately placed him at substantial risk of physical and
23 psychological harm in violation of his Eighth Amendment right to be free from cruel and unusual
24 punishment.  Plaintiff further alleges that the contraband watch policy in place at Calipatria is an
25 "underground regulation" implemented at the direction of the Warden, in violation of California
26 Department of Corrections regulations.  *SAC*, 6; 8.
27 ///
28 ///

**DISCUSSION**

*1.      Legal Standard*

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). "The old formula – that the complaint must not be dismissed unless it is beyond doubt without merit – was discarded by the *Bell Atlantic* decision [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)]." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S.__ , 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

*2.      Standards Applicable to Pro Se Litigants*

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to

state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

The court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a *pro se* civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi*, 839 F.2d at 623-24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### 3. Unknown Defendants

Plaintiff alleges his claims against two unknown defendants, the unknown officer who processed him upon his transfer to Ad Seg and placement on contraband watch, and an unknown registered nurse who visually inspected him for injury after 48 hours on contraband watch. Unknown defendants may be included in a complaint when the identities of the alleged defendants are not known prior to the filing of the complaint, however a claim stated against "Doe Defendants" without further identifying information is not favored in the Ninth Circuit. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). By previous order of the Court, Plaintiff was advised that he bears the ultimate responsibility for determining the identity of the unknown defendants. *See* Doc. No. 6 at 4, fn.1. Until that time, the Court dismisses Plaintiff's claims against the unknown defendants without prejudice. Should Plaintiff discover their identities in a timely manner, he may move to add them to an operative pleading at a later date. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (where identity of defendants is unknown prior to filing of complaint, plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds).

### 4. Eleventh Amendment Immunity

Plaintiff has sued the Warden of Calipatria State Prison, Defendant Leland McEwen, in both

1  his official and individual capacities, and is seeking compensatory damages in an amount of
2  $100,000 and punitive damages in the amount of $150,000.³ *SAC*, 7; 12.  However, Defendant
3  McEwen is immune to suit for damages under the Eleventh Amendment to the extent Plaintiff is
4  suing him in his official capacity.  Under the Eleventh Amendment, states are immune from suits for
5  damages brought in federal court.  *Henry v. County of Shasta*, 132 F.3d 512, 517 (9th Cir. 1997).
6  This protection extends to state officials acting in their official capacity.  *Regents of the University*
7  *of California v. Doe*, 519 U.S. 425, 429 (1997).⁴  Accordingly,  the Court **DISMISSES WITH**
8  **PREJUDICE** Plaintiff's damages claim against Defendant McEwen in his official capacity.

9        *5.*     *Plaintiff's Claims*

10        Plaintiff alleges three causes of action, each based on the events occurring during his time on
11  contraband watch and each arising out of rights articulated in the Eighth Amendment.  Plaintiff titles
12  his first cause of action as "corporal punishment; due process; freedom from cruel and unusual
13  punishment," and asserts violations of his Eighth Amendment and Fourteenth Amendment rights
14  arising from the contraband watch surveillance.  Plaintiff's second cause of action alleges
15  deprivation of basic human need; due process; and freedom from cruel and unusual punishment.
16  Plaintiff's third cause of action is titled "medical care," and also alleges due process and cruel and
17  unusual punishment.⁵

---

³ Plaintiff's SAC names Larry Small, the previous Warden at Calipatria, as a defendant. On May 18, 2010, the Court substituted Defendant McEwen, the current Warden, for Small [Doc. No. 22].

⁴ While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in their official capacities, *Will v. Michigan*, 491 U.S. 58, 66 (1989), it does not bar damage actions against state officials in their personal or individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992).

⁵ The Court liberally construes Plaintiff's SAC as alleging violations of his substantive due process rights based on his invocation of the Due Process clause of the Fourteenth Amendment in the text of each of his Eighth Amendment causes of action. As such, the Court will analyze Plaintiff's causes of action under the Eighth Amendment and not the Fourteenth Amendment as the Eighth Amendment is the more explicit textual source of constitutional protection. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("the Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified" and "in these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause.").

The Court finds that even a liberal construction of Plaintiff's allegations does not provide a basis for a procedural due process claim.  Plaintiff does not assert that he received any less than the process

a) Eighth Amendment

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind," *Id.* (quoting *Wilson*, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. *Id.* (quoting *Wilson*, 501 U.S. at 302-303).

i) Excessive Force

The Court construes Plaintiff's "corporal punishment" claim as an excessive force claim. Plaintiff alleges this cause of action against all named defendants and the unknown officer who processed him upon his arrival to Ad Seg.

Where prison officials are accused of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)). Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted. *Whitley*, 475 U.S. at 321. Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of

---

he was due – he was informed that he was being transferred to Ad Seg and placed on contraband watch because he ingested contraband into his body in the presence of prison officials, and he was held for a temporary time period of approximately four days before being released. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100 & n.20 (9th Cir. 1986).

the facts known to them, and any efforts made to temper the severity of a forceful response. *Id.* The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." *Id.* at 319. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-322 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1970)).

Plaintiff fails to state a plausible excessive force claim against any of the named defendants. According to the SAC, the only prison official who personally participated in the physical restraint of Plaintiff upon his arrival at Ad Seg is the unknown officer, against whom Plaintiff cannot maintain a cause of action for the reasons stated above. Defendants Diaz, Johnson, and Kellerman constitute the chain of command which resulted in Plaintiff being transferred to Ad Seg and placed on contraband watch, but are not alleged to have been involved in Plaintiff's actual processing upon arrival at Ad Seg. To establish liability under section 1983, Plaintiff must demonstrate Defendants' personal involvement in the alleged violation. *See Torres v. City of L.A.*, 548 F.3d 1197, 1206 (9th Cir. 2008). In other words, Plaintiff must specifically show how each named defendant, through his or her own individual actions, violated Plaintiff's constitutional right. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009). The only prison official alleged to have had direct personal involvement in the events surrounding Plaintiff's physical restraint while being placed on contraband watch is the unknown officer. Plaintiff does not allege that any of the named defendants in this action personally restrained him or otherwise exercised any force against him.

Plaintiff further alleges that Defendants Hopper and Andersen refused his requests to be released from contraband watch, but again does not state that either defendant personally participated in his physical restraint. To the extent Plaintiff asserts that any of the named defendants, including Defendants Hopper and Andersen, as well as Defendant McEwen in his individual capacity, violated his rights on the basis of their supervisory roles alone, his claim is not cognizable. Liability for a civil rights violation under Section 1983 may not be based on a theory of respondeat superior. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 693

1  (1978).  "Liability under [§] 1983 arises only upon a showing of personal participation by the
2  defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Therefore, "a supervisory official,
3  such as a warden, may be liable under Section 1983 only if he was personally involved in the
4  constitutional deprivation, or if there was a sufficient causal connection between the supervisor's
5  wrongful conduct and the constitutional violation." *Henry v. Sanchez*, 923 F. Supp. 1266, 1272
6  (C.D. Cal. 1996).

7  With respect to his claim against Defendant McEwen in his official capacity, Plaintiff alleges
8  that the Warden implemented and condoned an "underground" policy regarding contraband watch.
9  *See Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2001).  Plaintiff avers that the
10 contraband watch policy in effect at Calipatria violates two provisions of the California Department
11 of Corrections and Rehabilitations Operations Manual.  *SAC*, 6.  Plaintiff asserts that it is an
12 "underground regulation" that contravenes the Department's procedures for quarantining prisoners
13 and the use of restraint gear.  An alleged violation of prison regulations does not provide a basis for
14 an independent cause of action under section 1983, *see, e.g. Hignite v. Felker*, 2008 U.S. Dist.
15 LEXIS 111532 (E.D. Cal. July 11, 2008), and absent the promulgation of "a policy so deficient that
16 the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the
17 constitutional violation,'" Plaintiff cannot state a claim against Defendant McEwen in his official
18 capacity, and his claim for injunctive relief is subject to dismissal.  *Hansen v. Black*, 885 F.2d 642,
19 646 (9th Cir. 1989)(citations omitted); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

20 Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's excessive force
21 claim as to all named defendants.  Based on Plaintiff's allegations, any amendment would be futile
22 because none of the named defendants participated in physically restraining him upon his arrival at
23 Ad Seg, and these defendants cannot be held liable for any supervisory role they may have played
24 with respect to his transfer and placement on contraband watch.  As such, dismissal of Plaintiff's
25 excessive force claim is with prejudice as to all named defendants.  *Cahill v. Liberty Mut. Ins. Co.*,
26 80 F.3d 336, 339 (9th Cir. 1996) (leave to amend should not be granted where to do so would be
27 futile).
28 ///

ii) Conditions of Confinement

In his second cause of action, Plaintiff alleges that the conditions of his confinement while on contraband watch, described above in the factual background, violated the Eighth Amendment. Plaintiff appears to allege this claim against all defendants.

Confinement in prison constitutes "punishment" and is thus subject to scrutiny under the Eighth Amendment, which "prohibits punishments which . . . involve the unnecessary and wanton infliction of pain . . . or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981) (internal citations and quotation marks omitted). Thus, it is cruel and unusual punishment to deny medical care or "basic human needs" and may be cruel and unusual to deny "the minimal civilized measure of life's necessities." *Id.* at 347. Prison officials "must provide humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).

To succeed on an Eighth Amendment conditions of confinement claim, a prisoner must show that (1) the defendant prison official's conduct deprived him or her of the minimal civilized measure of life's necessities (the objective component) and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety (the subjective component). *Id.* at 834. To show deliberate indifference, the prisoner must establish that the defendant knew of and disregarded an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official may thus be free from liability if he or she did not know of the risk or took reasonable action in response to the risk. *Id.* at 844.

"The Constitution 'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). However, under applicable Supreme Court and Ninth Circuit law, Plaintiff's allegations that he was deprived of access to a toilet or sink, restricted from bathing himself, deprived of basic bedding and hygiene items while shackled for 105 hours straight, may give rise to a plausible claim for violation of his Eighth Amendment rights. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (stating that an Eighth Amendment violation may be established by conduct that deprives an inmate of basic human needs,

including the need for warmth); *Pollard v. GEO Group, Inc.*, 607 F.3d 583, 598-99 (9th Cir. 2010) (noting that an inmate's exposure to human waste may violate the Eighth Amendment and citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (concluding that exposure to human waste, even for 36 hours, would constitute a sufficiently serious deprivation to violate Eighth Amendment) and *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007)); *Johnson v. Lewis*, 217 F.3d 726, 735 (9th Cir. 2000) ("The Eighth Amendment does not tolerate prison officials' deliberate indifference, in the absence of exigent circumstances, to substantial deprivations of adequate shelter, food, drinking water, and sanitation.").

For example, subjecting a prisoner to constant illumination has been held to be a deprivation of a basic necessity that can, under some circumstances, violate the Eighth Amendment. "There is no penological justification for requiring inmates to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996). In addition, "access to a bed is an integral part of the 'adequate shelter' mandated by the Eighth Amendment…. [P]risons may not deprive those in their care of a basic place to sleep…" *Thomas v. Baca*, 514 F.Supp.2d 1201, 1216 (C.D. Cal. 2007).

However, to state an Eighth Amendment claim based on the conditions of confinement he experienced while on contraband watch, Plaintiff *also* must allege that subjectively each defendant had a culpable state of mind in allowing or causing the deprivations to occur. *Farmer*, 511 U.S. at 834. Plaintiff fails to do so. Plaintiff mentions only the Warden specifically by name in his SAC under the heading for this cause of action, but does not allege that the Warden had any personal involvement. As noted above, Defendant McEwen may not be held liable in his individual capacity for a constitutional violation based on his supervisory role alone, *Monell*, 436 U.S. at 693, and Plaintiff's claim against the Warden in his official capacity fails. Aside from the vague allegation that "Defendants were aware of this substantial risk of serious injury and failed to respond," *SAC*, 9, Plaintiff has not alleged any specific facts to suggest that the other named defendants were aware that the conditions in the holding cell were so inhumane so as to constitute the denial of the minimal measure of life's necessities.

The Court notes that Plaintiff alleges that Defendant Hopper, the Ad Seg Lieutenant,

1 personally observed the conditions of his confinement during his time on contraband watch. He also
2 alleges that Defendant Andersen, the Assistant Warden who toured Ad Seg, interacted with Plaintiff
3 while he was on contraband watch and presumably observed Plaintiff's conditions of confinement at
4 that time. As such, it is possible that Plaintiff could put forth additional facts to demonstrate that
5 these two defendants acted with deliberate indifference to his health or safety. However, based on
6 the allegations in his SAC, Plaintiff fails to state a plausible claim against either defendant at this
7 time. Plaintiff has not alleged sufficient facts to demonstrate that Defendant Hopper or Andersen
8 personally participated in the alleged deprivation of constitutional rights or knew of the violations
9 and failed to act to prevent them. *Hansen*, 885 F.2d at 646.

10  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's conditions of
11 confinement claim. Because it is possible that Plaintiff could cure this defective claim through
12 further amendment, dismissal of Plaintiff's confinement claim is without prejudice as to Defendants
13 Hopper and Andersen, who are alleged to have personally observed and interacted with Plaintiff
14 during his time on contraband watch. However, Plaintiff is cautioned that these two defendants
15 cannot be held liable for any supervisory role they may have played with respect to his time on
16 contraband watch. As to the remaining named defendants, dismissal is with prejudice based on the
17 reasons stated above.

18  iii) Deliberate Indifference to a Serious Medical Need

19  Plaintiff claims that Defendants violated his Eighth Amendment rights through their
20 deliberate indifference to his medical needs while on contraband watch. "[D]eliberate indifference
21 to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at
22 105. As discussed above, in order to state an Eighth Amendment claim based on deficient medical
23 treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent
24 response by the defendant. *Conn v. City of Reno*, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting *Jett
25 v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that
26 the failure to treat the plaintiff's condition could result in further significant injury, or the
27 unnecessary and wanton infliction of pain. *Id.* A deliberately indifferent response by the defendant
28 is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and

harm caused by the indifference. *Id.* In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm. *Id.*

Plaintiff alleges that he suffered from migraine headaches, neck and back pain, numbness in his extremities, bruises and cuts, and stomach cramping. *SAC*, 10. According to Plaintiff, he requested medical care, and was visually inspected while in his holding cell by the unknown registered nurse, who determined his complaints did not warrant further medical care while Plaintiff remained in Ad Seg. Delay of medical treatment can amount to deliberate indifference, *see Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002), but the prisoner must show that the delay caused further injury, which Plaintiff does not allege. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Furthermore, Plaintiff fails to allege facts linking any of the named defendants to the denial of medical treatment. Plaintiff only references the unknown registered nurse in his SAC under the heading for this cause of action, and fails to allege whether or how any of the named defendants may be liable. Plaintiff does not allege any facts that show the named defendants personally participated in the denial of his medical treatment. In addition, Plaintiff does not put forth any facts that suggest that the named defendants were aware of a substantial risk that Plaintiff would be denied medical treatment and had a reasonable opportunity to prevent a constitutional violation from occurring.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's deliberate indifference claim as to all named defendants. Based on Plaintiff's allegations, any amendment would be futile because none of the named defendants are alleged to have participated in or otherwise known about or been involved in the administration of his medical care, and these defendants cannot be held liable for any supervisory role they may have played with respect to his treatment. As such, dismissal of Plaintiff's excessive force claim is with prejudice as to the named defendants. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (leave to amend should not be granted where to do so would be futile).

///

///

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In addition, the Court **GRANTS** Plaintiff leave to amend *only* as to his Eighth Amendment conditions of confinement claim against Defendants Hopper and Andersen. The remainder of Plaintiff's claims are **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**. If Plaintiff still wishes to pursue this action and amend his claims in accordance with this Order, he shall have **thirty** (30) days from the date of this Order within which to file a third amended complaint.

**IT IS SO ORDERED**.

DATE: November 3, 2010

HON. MICHAEL M. ANELLO
United States District Judge